UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW SABERTON<br>and<br>AEROCLENZ, INC.,<br>　　　　　Plaintiffs,<br>v.<br>THE WEINTRAUB GROUP, P.L.C.<br>and<br>ARNOLD S. WEINTRAUB<br>　　　　　Defendants. | Judge<br><br>Case No. 2:25-cv-10991<br><br>**COMPLAINT**<br><br>**(Demand for Jury Trial)** |

　　　　Plaintiffs, Matthew Saberton and AeroClenz, Inc. ("**Plaintiffs**") hereby allege as follows for their complaint against defendants Arnold S. Weintraub and The Weintraub Group, P.L.C. ("**Defendants**").

**NATURE OF THE CLAIMS**

　　　　1.　　From 2020 through 2024, Defendants provided legal services and representation to Plaintiffs on a range of legal matters including, *inter alia*, patents, trademarks, contracts, legal disputes, and general legal advice. Defendants, however, (i) failed to disclose a direct and material conflicts of interest between Plaintiffs and other of Defendants' clients, (2) failed to inform and advise Plaintiffs regarding material information relating to Plaintiffs' patent rights; (3) acted to the detriment of Plaintiffs' legal rights in favor of their own interests and rights and those of other clients; and (4) performed legal services for Plaintiffs in at least a negligent, if not intentional, manner to cause Plaintiffs' significant injury. Defendants' acts and omissions caused material and significant injury to Plaintiffs, including causing Plaintiffs to lose key patent rights in the technology core to their business.

1

**PARTIES**

2. Plaintiff AeroClenz, Inc. is a corporation organized under the laws of the State of Florida and with a principal place of business in the State of Florida.

3. Plaintiff Matthew Saberton is an individual and citizen of the State of Florida. Mr. Saberton founded, and is the CEO and majority owner of, AeroClenz.

4. Defendant The Weintraub Group, P.L.C. is, on information and belief, a professional limited liability company organized under the laws of the State of Michigan and with a principal place of business in Southfield, Michigan. The Weintraub Group provides legal services and representations to clients, particularly related to patents, trademarks, and related matters.

5. Defendant Arnold Weintraub is an individual and, on information and belief, a citizen of the State of Michigan. On information and belief Mr. Weintraub is the sole member and manager of The Weintraub Group. On information and belief, Mr. Weintraub is registered and admitted to practice law in the State of Michigan and before U.S. Patent and Trademark Office.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction under at least 28 U.S.C. § 1332(a) as this civil matter is between citizen of different states and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. The Court also has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 as resolution of the claims require a substantial resolution of federal patent law.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has personal jurisdiction over Defendants because Defendants are citizens of, and reside in, Michigan.

9. Venue is proper in this judicial district under at least 28 U.S.C. § 1391(b)(1) because Defendants reside in this district, and under subsection (2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## RELEVANT FACTS

10. Mr. Saberton has an extensive educational and professional background in aviation. In addition to working as a pilot for many years, he earned a B.S. in Aviation Science from Indiana State University and has an Airline Transport Pilot certificate and is a certified instructor.

11. During his professional activities, Mr. Saberton recognized the need for a new and better system for cleaning aircraft. As a result, in October 2020, Mr. Saberton founded AeroClenz to develop and market a propriety disinfection system to mitigate the risk of airborne and surface pathogens, particularly in aircraft.

12. Shortly thereafter, Mr. Saberton partnered with Addman Engineering LLC (together with its related entities, "Addman") to finalize development and commercialize an aircraft disinfecting device termed the "Jet Puck." On information and belief, Addman is a portfolio company owned and managed by a private equity firm, American Industrial Partners ("AIP").

13. The parties understood and agreed that Addman would manufacture the Jet Puck and related products with AeroClenz serving as the airline industry expert and exclusive distributor to customers. The parties also agreed and understood that Mr. Saberton would retain his ownership in the inventions and patents, subject to an Option Agreement to be agreed upon

by the parties under which Addman could purchase Mr. Saberton's patent interests for a multiple of relevant sales revenue, estimated to be in the millions of dollars.

14. Addman introduced Mr. Saberton to Mr. Weintraub, and Mr. Weintraub and The Weintraub Group agreed to prepare and file a patent application on the aircraft disinfecting device. On information and belief, Addman and/or AIP were clients of Defendants at that time, and at all relevant times herein.

15. On or about December 18, 2020, Defendants filed provisional Patent Application No. 63/127,590 ("'590 Provisional Application") with the U.S. Patent and Trademark Office. Matthew Saberton is listed as one of the three co-inventors (along with two individuals from Addman). Mr. Saberton executed a Power of Attorney document in favor of Defendants for the provisional application.

**Defendants' Other Legal Representations of Plaintiffs**

16. Between 2020 and 2024, and in addition to the patent-related representation, Mr. Weintraub and The Weintraub Group represented Plaintiffs in a wide range of other legal matters including:

    a. The preparation and filing of trademark applications for AEROCLENZ;

    b. Trademark searching and preliminary registration analysis;

    c. Advice, review, and drafting of a distribution agreement between AeroClenz and Addman;

    d. Advice, review, and drafting of the patent option agreement between Mr. Saberton and Addman;

    e. Advice, review, and drafting of business documents such as business plans, non-disclosure agreements, consulting agreements, and other contracts;

    f.    Performing work in connection with a dispute with Truett/TrueAIR;

    g.    Performing work in connection with a trademark dispute with Cleaners Chemical Corp.; and

    h.    Performing work in connection with an agreement with Continuum Applied Technology, Inc.

17. During this period, Plaintiffs repeatedly sought legal advice from Defendants, and Defendants repeatedly provided legal advice to Plaintiffs, regarding rights and ownership in the patents, as well as on a Distribution Agreement and an Option Agreement between Plaintiffs and Addman/AIP.

**Defendants' Filing of Related Patent Applications**

18. Between 2020 and 2024, Mr. Weintraub and The Weintraub Group filed several related patent applications on an "Aircraft disinfecting device" with Mr. Saberton as one of the named co-inventors.

19. On or about November 4, 2021, Defendants filed Patent Application No. 17/518,910, with the U.S. Patent and Trademark Office, naming Matthew Saberton as one of the three co-inventors. This application claimed priority to the '590 Provisional Application.

20. On or about December 9, 2021, Defendants filed Patent Application No. PCT/US21/62512 ("PCT Application") with the U.S. Patent and Trademark Office, naming Matthew Saberton as one of the three co-inventors. This application claimed priority to the '590 Provisional Application. A "PCT" is a mechanism through which inventors can file an application one jurisdiction (such as the United States) and later use the single filed application when filing national patent applications in other countries or jurisdictions.

21. On or about March 4, 2023, Defendants filed Patent Application No. 18/124,165 ("'165 Application"), with the U.S. Patent and Trademark Office, naming Matthew Saberton as

5

one of the co-inventors. This application claimed priority to the PCT Application as a continuation-in-part.

22. On or about May 17, 2023, Defendants filed Patent Application No. 18/198,462, with the U.S. Patent and Trademark Office, naming Matthew Saberton as one of the co-inventors. This application claimed priority to the PCT Application and '165 Application as a continuation-in-part.

23. In each of the foregoing applications, Mr. Saberton executed a Power of Attorney document in favor of Defendants.

**Defendants Declare An Emergency Need To Assign Patent Applications**

24. On or about April 20, 2023, Mr. Weintraub telephoned Mr. Saberton to tell him that it was urgent and necessary for Mr. Saberton to immediately assign his patent rights to Addman and that the patents could be lost, and Mr. Weintraub could lose his law license, if the assignments were not immediately executed.

25. At around the same time, Mr. Saberton received an email from The Weintraub Group stating that executing the assignment was urgent and necessary in order to move forward on applications relating to the PCT Application:

> Attached is the assignment for the above mentioned patent matter.
> Please print, date, sign, and return it back to me by email as soon as possible.
>
> This is a timely matter which needs immediate attention.

26. And a few days later, another email from The Weintraub Group:

6

> The document that needs to be signed is the Assignment. The first attachment.
> I have not received any signatures for the assignment.
> It needs to be completed by all three of you.
> You can sign them separately, and send them back to me individually.
> Please print, sign and send back to me ASAP.
>
> I have received the Korean and Brazilian POA's from both Stephen Glaudel, and Matt Saberton.
> **I still need Mark to complete those two POA's and return them to me (both attached).**
> These two foreign associates are requesting their own POA be filled out and returned.
>
> It is URGENT that we get the Assignment asap to move forward on the entry of the National Phase for AIP-103-A-PCT.

27. Mr. Saberton relied on Defendants' statements, and signed all of the papers provided to him, including the assignment, based on the necessity and urgency communicated by Mr. Weintraub and The Weintraub Group. A copy of this assignment is attached hereto as Exhibit A.

28. At no time did Mr. Weintraub or The Weintraub Group advise Mr. Saberton of the ramifications of the assignment, or inform him that the assignment left Mr. Saberton and AeroClenz with no patent rights, or that it mooted the still being negotiated Option Agreement being pursued by Plaintiffs with Defendants' representation.

29. Approximately one month later, Mr. Saberton received another email from The Weintraub Group stating that the "drop dead filing date" for the next patent application was Wednesday, May 17, 2023. No mention was made of the need for any assignment until late on May 15, then Mr. Saberton received an email stating that another assignment "must be signed" in less than 2 days:

> I am attaching the Assignment which must be signed by all of you in connection with the above referenced continuation in part patent application.
>
> Please sign this document, scan and email it back to me by the **morning of Wednesday, March 17, 2023.**

(the "Wednesday, March 17" reference in the May 15 email is a typo; the correct and understood date was Wednesday, May 17, 2023).

30. Mr. Saberton relied on the Defendants' statements, and signed all of the papers provided to him, including the assignment, based on the necessity and urgency communicated by Mr. Weintraub and The Weintraub Group. A copy of this assignment is attached hereto as Exhibit B.

31. At no time did Mr. Weintraub or The Weintraub Group advise Mr. Saberton of the ramifications of the assignment, or inform him that the assignment left Mr. Saberton and AeroClenz with no patent rights, or that it mooted the still being negotiated Option Agreement being pursued by Plaintiffs with Defendants' representation.

**Addman Cancels Development**

32. A few months later, in August 2023, Addman advised Mr. Saberton and AeroClenz that it was pausing—and then terminating—the Jet Puck project.

33. Mr. Saberton and AeroClenz attempted to negotiate and communicate with Addman regarding Mr. Saberton's patent rights so that AeroClenz could proceed, but Addman stated that it would not return Mr. Saberton's patent rights unless Plaintiffs paid Addman/AIP $1.35 million.

**Defendants' False Patent Filings**

34. As early as November 2021, Defendants identified Addman as the sole owner of the patent applications on U.S. Patent and Trademark Office paperwork despite knowing that Mr. Saberton had not assigned his rights to Addman. At the time, Defendants also knew that there existed no agreement in which Mr. Saberton would assign his rights to Addman.

35. At the time Defendants identified Addman as the sole owner of the patent applications on U.S. Patent and Trademark Office paperwork, Defendants were aware that the parties understood that Mr. Saberton would retain his ownership of the patents going forward,

8

subject to an option agreement under which Addman could purchase his rights for a multiple of product revenues—likely in the millions of dollars.

36. Also, in the '910 Application filed on or about November 4, 2021, Defendants identified Addman as the sole owner/assignee of the application. This identification was false, and made to the detriment of Plaintiffs and for the benefit on one of Defendants' other clients—Addman/AIP.

37. Similarly, in the '165 Application filed on or about March 21, 2023, Defendants identified Addman as the sole owner/assignee. This identification was false, and made to the detriment of Plaintiffs and for the benefit on one of Defendants' other clients—Addman/AIP.

38. In April and May 2023, when Defendants sent numerous communications to Mr. Saberton expressing the urgent necessity to execute assignments, such communications were false and materially misleading.

39. To the extent assignment documents transferring Mr. Saberton's rights to Addman were required by some government patent office, such requirement was solely due to Defendants' false and improper prior identification of Addman as the sole owner/assignee.

40. Regardless, Defendants failed to inform Mr. Saberton of the ramifications of executing the assignment documents they sent him, specifically that they would extinguish his rights in the patents and that he could not practice his own inventions without risking being sued for infringement of his own patents nor could he sell products practicing his invention without exposing customers to the risk of being sued for infringement of his own patents.

## COUNT ONE – LEGAL MALPRACTICE

41. Plaintiffs reallege and incorporate the preceding paragraphs as if fully restated herein.

42. At all relevant times alleged herein, an attorney-client relationship existed between Plaintiffs and Defendants.

43. Defendants acted with at least negligence in their legal representation of Plaintiffs by at least:

   a. Representing Plaintiffs when that representation was directly adverse to another client, *inter alia*, Addman and AIP;

   b. Failing to properly disclose conflicts of interest in their representation vis-à-vis other of Defendants' clients, including Addman and AIP and, if waivable, failing to obtain a waiver of those conflicts of interests from Plaintiffs;

   c. Filing patent applications on which Mr. Saberton was an inventor which falsely stated that Addman was the owner or assignee of the patent application; and

   d. Recommending that Mr. Saberton execute the assignment of his patent rights in favor of Addman.

44. Defendants' acts and omissions in representing Plaintiffs failed to meet the standard of care required of legal professionals under at least the Michigan Rules of Professional Conduct, including Rule 1.1, 1.3, 1.4, 1.7, and 1.8, and the United States Patent and Trademark Office Rules of Professional Conduct, 37 C.F.R. §§ 11.101, 11.103, 11.104, 11.107, and 11.108.

45. Defendants' negligence was the proximate cause of Plaintiffs' injury, including losing all patent rights in Mr. Saberton's inventions and patents such as the right to freely practice the inventions, the right to exclude others from practicing the inventions, and the right to mark or advertise rights in the patents.

46. Plaintiffs have been damaged in an amount to be proven, but Addman has demanded approximately $1.35 million from Plaintiffs to reacquire the patent rights.

## COUNT TWO – FRAUD/FRAUDULENT INDUCEMENT

47. Plaintiffs reallege and incorporate the preceding paragraphs as if fully restated herein.

48. Defendants made material representations concerning the immediate need to execute an assignment of patent rights in favor of Addman.

49. Defendants' representations were false.

50. When Defendants made the representations they knew them to be false, or acted recklessly without knowledge of the truth and as a positive assertion.

51. Defendants made the representation with the intention that Plaintiffs would act upon it by, *inter alia*, immediately executing the assignments.

52. Plaintiffs reasonably relied on the Defendants' representations by signing the assignments.

53. Plaintiffs have suffered damages as a result, including the loss of patent rights.

54. In addition to an award of damages and as a result of the fraudulent inducement, the assignments should be rescinded.

## COUNT THREE – SILENT FRAUD/FRAUDULENT CONCEALMENT

55. Plaintiffs reallege and incorporate the preceding paragraphs as if fully restated herein.

56. Defendants made material representations concerning the immediate need to execute an assignment of patent rights in favor of Addman.

57. Defendants failed to disclose the legal and factual ramifications to Plaintiffs that would result from the assignment, such omissions constituting material information.

58. Defendants had a legal and equitable duty of disclosure regarding that information, such suppression amounting to a falsehood.

59.     When Defendants suppressed such information they were aware of the material information but suppressed it through false or misleading statements or actions.

60.     Defendants concealed the information with the intention that Plaintiffs would act, inter alia, immediately executing the assignments.

61.     Plaintiffs reasonably relied on the Defendants' concealment by signing the assignments.

62.     Plaintiffs have suffered damages as a result, including the loss of patent rights.

63.     In addition to an award of damages and, as a result of the fraudulent concealment, the assignments should be rescinded.

### COUNT FOUR – INNOCENT MISREPRESENTATION

64.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully restated herein.

65.     Defendants were acting as an agent of Addman in connection with the assignment of patent rights in favor of Addman.

66.     Defendants made false, material representations concerning the immediate need to execute an assignment of patent rights in favor of Addman. Alternatively to knowing the representations were false, Defendants did not know they were false or made them recklessly.

67.     Plaintiffs were deceived by Defendants' representations and reasonably relied on those representations in signing the assignments.

68.     Plaintiffs' loss of patent rights inured to the benefit of Defendants and Addman.

69.     Plaintiffs have suffered damages as a result, including the loss of patent rights.

70.     In addition to an award of damages, and as a result of the misrepresentation, the assignments should be rescinded/declared void.

## COUNT FIVE – DECLARATORY JUDGMENT
### 28 U.S.C. § 2201 *ET SEQ.*

71. Plaintiffs reallege and incorporate the preceding paragraphs as if fully restated herein.

72. Plaintiffs contend that the patent assignments prepared by Defendants—including the April 2023 and May 2023 patent assignments—are void. On information and belief, Defendants disagree.

73. As a result, there is an actual and justiciable controversy exists between the parties as to the patent assignments.

74. The issuance of declaratory relief by this Court will terminate some or all of the parties' dispute and resolve Plaintiffs' rights in and to the subject patents.

75. Plaintiffs are entitled to a declaratory judgment establishing their rights and obligations in and to the patents and under the patent assignments.

76. Plaintiffs therefore request a declaration that the patent assignments are void and that Mr. Saberton retains his ownership in all the subject patents, patent applications, and inventions.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that Defendants' April 2023 patent assignment as to Matthew Saberton is rescinded and/or void;

b. Declare that Defendants' May 2023 patent assignment as to Matthew Saberton is rescinded and/or void;

c. Direct Defendants to file with all relevant patent authorities all documents necessary to evidence the rescission/voiding of the patent assignments as to

    Matthew Saberton and to confirm Matthew Saberton's continued ownership of his patent and patent application interests;

d. Award Plaintiffs' actual damages, including but not limited to all costs and fees incurred in seeking the return of Matthew Saberton's patent rights;

e. award Plaintiffs' costs in the action and reasonable attorney fees;

f. award punitive damages in an amount to be proven at trial; and

g. award such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

DATED this 7th day of April 2025.

**RENNER OTTO**

*/s/ Kyle B. Fleming*
Kyle B. Fleming (OH 0064644)
Mark C. Johnson (OH 0072625)
**RENNER OTTO**
1621 Euclid Avenue, Floor 19
Cleveland, Ohio 44115
kfleming@rennerotto.com
mjohnson@rennerotto.com
+1.216.621.0200

*Attorneys for Plaintiffs*

14