UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW SABERTON and
AEROCLENZ, INC.,

              Plaintiffs,

v.

THE WEINTRAUB GROUP, P.L.C.
and ARNOLD S. WEINTRAUB,

              Defendants.

Case No. 2:25-cv-10991

Honorable Susan K. DeClercq
United States District Judge

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF No. 11)**

This case stems from a failed attorney-client relationship. The clients are

seeking to hold their attorneys accountable for various counts of alleged malpractice

and fraud. Before this Court is the defendant-attorneys' motion for partial dismissal,

presenting the following key question: are the clients' fraud claims duplicative of

the malpractice claim? For the reasons explained below, this Court finds that with

one narrow exception pertaining to the silent fraud claim, the remaining fraud claims

should not be dismissed as duplicative of the malpractice claim. Accordingly, this

Court will grant in part and deny in part the motion for partial dismissal.

## I. BACKGROUND

In October 2020, Plaintiff Matthew Saberton founded Plaintiff AeroClenz, Inc. ("AeroClenz") "to develop and market an aircraft disinfection system" with a patentable device called "Jet Puck." ECF No. 1 at PageID.3. Not long after, Saberton partnered with Addman Engineering LLC ("Addman")—a company owned by American Industrial Partners—"to finalize development and commercialize" the Jet Puck device. *Id.* In this partnership, Addman agreed to manufacture the Jet Puck and related products, while AeroClenz served "as the airline industry expert and exclusive distributor to customers." *Id.*

Through Addman, Saberton later met Defendants Arnold Weintraub and The Weintraub Group, P.L.C ("The Weintraub Group"), who agreed to handle Saberton's patent process for the Jet Puck. *Id.* at PageID.4. But, at that time, Saberton did not know that Addman was already a client of Defendants. *Id.* at PageID.4. Nevertheless, between 2020 and 2024, Plaintiffs retained Defendants to represent them in the Jet Puck's patent proceedings, and a wide range of other matters. *Id.* at PageID.4–5.

In April 2023, Weintraub telephoned Saberton to tell him that it was urgent and necessary for Saberton to immediately assign his patent rights to Addman as the sole owner. *Id.* at PageID.6, 9. Weintraub warned Saberton that if the assignments were not immediately executed, the patents could be lost and Weintraub risked

losing his law license. *Id.* Around the same time, The Weintraub Group sent an e-mail to Saberton restating that the assignment was urgent and necessary to move forward on the November 2021 application (hereafter "PCT application"). *Id.* at PageID.6–7. Saberton relied on the necessity and urgency communicated by Defendants and signed the assignment a few days later. *Id.* at PageID.8.

Approximately one month later, The Weintraub Group sent another e-mail to Saberton on May 15, 2023, saying that the "drop dead filing date" for the next patent application was May 17, 2023, and that Saberton's assignment of patent rights to Addman "must be signed" in less than two days. *Id.* at PageID.7. Saberton, relying once more on the necessity and urgency communicated by Defendants, signed all the documents provided to him, including the assignment. *Id.* at PageID.8. And on May 17, 2023, Defendants filed the patent application listing Saberton as a co-inventor and Addman as the sole owner. *Id.* at PageID.6, 8.

In August 2023, approximately three months later, Addman paused and ultimately terminated the Jet Puck project. *Id.* at PageID.8. Saberton then attempted to obtain his patent rights so AeroClenz could continue the development of the Jet Puck, but Addman—as the sole owner—stated that it would only transfer back those patent rights for $1.35 million dollars. *Id.*

On April 4, 2025, Plaintiffs sued Defendants, bringing the following five counts: Legal Malpractice (Count I), Fraud/Fraudulent Inducement (Count II); Silent

Fraud/Fraudulent Concealment (Count III); Innocent Misrepresentation (Count IV); and Declaratory Judgment under 28 U.S.C. § 2201 *et seq.* (Count V). *Id.* at PageID.9–14. On July 14, 2025, Defendants moved for partial dismissal, arguing that Counts II through IV were redundant to legal malpractice and could not be brought in parallel. ECF No. 11. They also argue that Count V should be dismissed because Plaintiffs cannot perform the requested relief as non-owners of the patent applications. *Id.* at PageID.81. Plaintiffs responded, ECF No. 13, and Defendants replied, ECF No. 14.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (internal quotation marks and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; see also *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503–04 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."). If not, then the court must grant the motion to dismiss. *See Twombly*, 550 U.S. at 570; *see also Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

### III. ANALYSIS

Defendants do not challenge Plaintiffs' legal malpractice claim under Civil Rule 12(b)(6); instead, they argue the complaint sounds only in malpractice and that the fraud claims should be dismissed as duplicative. *See generally* ECF No. 11. Defendants contend that the fraud claims and the malpractice claim rely upon the same representation—that Saberton urgently needed to assign his patent rights to Addman. *Id.* at PageID.69–73. They also argue that the fraud claims do not comply with Civil Rule 9(b)'s pleading requirements. *Id.* at PageID.73–81. Lastly, Defendants argue that Plaintiffs' declaratory judgment claim should be dismissed

- 5 -

because it is a remedy rather than an independent claim and because Plaintiffs cannot obtain it from Defendants.[1] *Id.* at PageID.81.

Plaintiffs, in turn, respond that there are material differences between malpractice and fraud claims, including that fraud claims do not require the existence of an attorney-client relationship, serve different interests, have different elements, require different *mens rea*, and provide different remedies. ECF No. 13 at PageID.97. Plaintiffs also assert that their fraud claims meet the pleading requirements and that they may bring a declaratory judgment claim under the Declaratory Judgment Act. *Id.* at PageID.98–113.

As explained below, this Court finds that the claims are not duplicative and are sufficiently pleaded to proceed, with the exception of one aspect of the silent fraud claim. This Court will dismiss the declaratory judgment count because it is not an appropriate basis for a claim, but that dismissal does not, at this stage, preclude Plaintiffs from seeking declaratory judgment as a remedy.

### A. Count II Fraud

For this count, there are two issues before this court. First, this Court must determine whether Plaintiffs successfully pleaded a fraud claim; and second, this

---

[1] Defendants also briefly argue that AeroClenz should be dismissed because it "was not a party to any assignment." ECF No. 11 at PageID.80. But this assertion lacks authority or elaboration, so this Court will not dismiss AeroClenz on this ground at this time.

Court must determine whether the fraud claim is duplicative of the malpractice claim. For reasons provided below, this Court finds that Plaintiffs fraud claim will not be dismissed.

### 1. Fraud Pleading Standard

Plaintiffs have sufficiently pleaded their fraud claim. In Michigan, the elements of a fraud claim are:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*City of Novi v. Robert Adell Child.'s Funded Tr.*, 701 N.W.2d 144, 152 n. 8 (Mich. 2005). Fraud and misrepresentation claims are held to a higher pleading standard under Civil Rule 9(b) in which claims of fraud must be stated with particularity. *See* FED. R. CIV. P. 9(b). The Sixth Circuit has interpreted this particularity requirement to mean that a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982–83 (6th Cir. 2017) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). "At a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied." *Frank*, 547 F.3d at 570.

Plaintiffs have sufficiently pleaded the elements of fraud with particularity. *See id.*; *see also Robert Adell*, 701 N.W.2d at 152 n. 8. First, they allege that on two occasions, Defendants made knowingly false material representations about the immediate need to execute an assignment of patent rights to Addman. ECF No. 1 at PageID.11. Plaintiffs also assert that Defendants made those representations with the intention that Plaintiffs should act on them, and that Plaintiffs relied on those representations at the loss of their patent rights. *Id.* Accordingly, Plaintiffs have alleged facts supporting all the foregoing elements.

In this case, the complaint alleges the dates of the purportedly fraudulent communications (April 20, 2023, and May 17, 2023); the substance of the alleged misrepresentations (that it was "urgent and necessary for Mr. Saberton to immediately assign his patent rights"); the identity of the individuals who made those statements (Mr. Weintraub and The Weintraub Group); the means by which they were conveyed (telephone and email); and the resulting injury (loss of patent rights). *See* ECF No. 1 at PageID.6–8. Accordingly, the complaint satisfies Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Plaintiffs have therefore adequately stated a claim for fraud.

### 2. The Fraud Claims are not Duplicative of the Malpractice Claims

Plaintiffs' fraud claim is not duplicative of the malpractice claim because it is not framed in negligence and independently alleges all elements of fraud—

including knowingly false statements made to induce the assignment of patent rights. Although a plaintiff may bring both a malpractice claim and a separate fraud claim against an attorney-defendant, *see Brownell v. Garber*, 503 N.W.2d 81, 87 (Mich. App. 1993), Michigan courts will dismiss the fraud claim as duplicative if the complaint, read as a whole, sounds in malpractice, *see Aldred v. O'Hara-Bruce*, 458 N.W.2d 671, 672–73 (Mich. App. 1990). Michigan courts generally recognize the potential for distinct claims because "the interest involved in a claim for damages arising out of a fraudulent misrepresentation differs from the interest involved in a case alleging that a professional breached the standard of care." *Brownell*, 503 N.W.2d at 87. In essence, where a plaintiff alleges facts supporting the elements of both fraud and malpractice, Michigan law does not preclude testing the factual sufficiency of each claim. *See id.* at 87–88 (reversing dismissal of malpractice and fraud claims). "Simply put, fraud is distinct from malpractice." *Id.* at 87.

When characterizing potentially duplicative claims in the malpractice context, Michigan courts determine "[t]he gravamen of an action . . . by reading the [complaint] as a whole." *Aldred*, 458 N.W.2d at 672–73. A legal malpractice claim under Michigan law requires: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *McKenzie v. Berggren*, 99 F. App'x 616, 619 (6th Cir. 2004) (quoting *Coleman v.*

*Gurwin*, 503 N.W.2d 435, 436–37 (Mich. 1993)). A claim is treated as legal malpractice when a plaintiff "characterizes a claim against an attorney as a negligence claim and the duty element of the negligence claim is supplied by the existence of an attorney-client relationship." *Brownell*, 503 N.W.2d at 87.

Here, Defendants contend that Plaintiffs' fraud claim is duplicative of, and subsumed by, the legal malpractice claim, arguing that the fraud allegations are not factually distinct. ECF No. 11 at PageID.69. But Defendants cite no authority for the proposition that shared facts alone require dismissal of one claim as duplicative. They correctly identify the rule that courts must read the complaint as a whole to assess its redundancy—a necessarily nuanced task. *See Aldred*, 458 N.W.2d at 672–73. Both claims here arise from the same attorney-client relationship, but the fraud claim extends beyond allegations of deficient legal advice: it alleges that Defendants made affirmatively false assertions of urgency and necessity, communicated with the purpose of inducing Saberton to assign his patent rights. Although those representations might also constitute poor legal advice, "if knowingly false, [they] may constitute fraud." *Brownell*, 503 N.W.2d at 87. Accordingly, even if the two claims rest on overlapping facts, "[f]raud is no less actionable because it is committed by an attorney with whom the plaintiff has an attorney-client relationship." *Id.*

None of Defendants' cited authorities addresses whether a fraud claim is duplicative of a malpractice claim. Indeed, *Patelczyk* concerned prima facie liability, *Barnard*, *Boyle*, and *Broz* involved no fraud claims whatsoever, and *Aldred* held that a breach of contract claim sounded in malpractice. Furthermore, Defendants misconstrue *Brownell*. In that case, the malpractice and fraud claim both arose from the same tax advice, yet the court of appeals reversed dismissal of both claims and remanded for further proceedings. *See Brownell*, 503 N.W.2d at 87–88. The court noted in dicta that summary judgment might be appropriate if the plaintiff could not raise a genuine issue of material fact—not that the claims were duplicative at the pleading stage. *Id.* Following the same reasoning in a more recent but unpublished decision, the Michigan Court of Appeals reversed the trial court's decision to dismiss the plaintiff's fraud claims as duplicative of malpractice. *See Fuqua v. Goldstein*, No. 336418, 2018 WL 3397800, at *3–7 (Mich. App. July 12, 2018). The *Fuqua* court held that the plaintiff had adequately stated a fraud claim by alleging that her attorney, knowing it to be false, told her she could obtain mortgage modifications by filing for Chapter 7 bankruptcy. *Id.* at *7. Accordingly, Plaintiffs' fraud claim is not duplicative of the malpractice claim and will not be dismissed.

### B. Count III: Silent Fraud/Fraudulent Concealment

*1. Silent Fraud Pleading Standard*

- 11 -

Plaintiffs' silent fraud claim is adequately pleaded, but to the extent it charges Defendants with failure to disclose legal ramifications it is duplicative of the malpractice claim. To establish a claim of silent fraud under Michigan law, a plaintiff must prove: (1) a legal or equitable duty of disclosure; (2) some type of representation by words or actions that was false or misleading; and (3) intention to deceive. *See Deschane v. Klug*, 2 N.W.3d 131 (Mich. App. 2022). The duty to disclose is a threshold requirement. Without it, silence alone is not actionable. And whether such a duty exists is a question of law for the court. *Hord v. Env't Research Inst. of Mich.*, 617 N.W.2d 543, 546 (Mich. 2000); *Murdock v. Higgins*, 559 N.W.2d 639, 642 (Mich. 1997).

Defendants argue that they had no duty to disclose the factual or legal ramifications of the patent assignment. ECF No. 11 at PageID.77–78. Plaintiffs respond that Defendants owed duties of loyalty, care, fair dealing, and diligence by virtue of the power of attorney executed for the patent applications, independent of any obligations arising from the attorney-client relationship. ECF No. 13 at PageID.108–10. Defendants rejoin that Plaintiffs' argument fails because Mr. Saberton was aware of the assignment—having executed it himself—and because Defendants omitted no material fact. ECF No. 14 at PageID.119–21.

As discussed above, Plaintiffs have adequately alleged facts supporting the elements of fraud generally. *See supra* Section III.A. Thus, the critical question is

whether Defendants owed a duty to disclose. A duty to disclose the consequences of the patent assignment could stem from either the attorney-client relationship or the power-of-attorney relationship. As explained below, the source of that duty—and whether it is reasonably inferred from one relationship or the other—determines whether each sub-claim sounds in fraud or malpractice. At this stage, drawing all reasonable inferences in Plaintiffs' favor, *see Waskul*, 979 F.3d at 440, Plaintiffs have sufficiently pleaded a silent fraud claim, but to the extent the duty of disclosure arises out of the attorney-client relationship it is duplicative of the malpractice claim.

### 2. Failure to Disclose Factual Ramifications is not Duplicative of Malpractice

The failure to disclose the factual consequences of the patent rights assignment is not duplicative of the malpractice claim and will not be dismissed.

Michigan courts dismiss a fraud claim as duplicative only if the complaint, read as a whole, sounds in malpractice. *See Aldred*, 458 N.W.2d at 672–73. Additionally, at the pleading stage, the Court draws all reasonable inferences in the plaintiff's favor, *see Waskul*, 979 F.3d at 440, and the existence and scope of an agency relationship—including the duties it encompasses—is a question of fact not properly resolved on a motion to dismiss, *see Mich. Nat'l Bank v. Kellam*, 309 N.W.2d 700, 704 (Mich. App. 1981).

First, it is reasonable to infer that the duty to disclose factual consequences stems from the power-of-attorney relationship. In Michigan, a power of attorney "is

a legal document recognized by law as evidence of an agency relationship between the principal and the agent." *Persinger v. Holst*, 639 N.W.2d 594, 597 (Mich. App. 2001). Here, Saberton executed a power-of-attorney document in favor of Defendants in connection with the patent applications. ECF No. 1 at PageID.4. Although the written instrument has not been produced and its precise scope is not yet established, that is precisely why dismissal is inappropriate at this stage. The facts alleged to have been concealed—such as the permanent loss of patent rights— are objective, real-world consequences of the transaction, not the product of professional legal judgment. It is therefore reasonable to infer that the duty to disclose those facts flows from the power-of-attorney relationship.

Second, read as a whole, this claim does not sound in malpractice. A claim that Defendants concealed objective facts with intent to defraud is not a claim that Defendants rendered deficient legal advice. It does not require the Court to evaluate whether Defendants met the professional standard of care, and it does not depend on the attorney-client relationship to supply the duty element. *See Brownell*, 503 N.W.2d at 87 ("[F]raud is no less actionable because it is committed by an attorney with whom the plaintiff has an attorney-client relationship.").

Because the duty to disclose is reasonably inferred from the power-of-attorney relationship and the claim does not sound in malpractice when the complaint is read

- 14 -

as a whole, this claim is not duplicative. Accordingly, Plaintiffs' silent fraud claim based on the failure to disclose factual ramifications will not be dismissed.

### 3. *Failure to Disclose Legal Ramifications is Duplicative of Malpractice*

The failure to disclose legal ramifications, by contrast, is duplicative of the malpractice claim and will be dismissed. Michigan courts dismiss a fraud claim as duplicative where the complaint, read as a whole, sounds in malpractice. *See Aldred*, 458 N.W.2d at 672–73. Additionally, silent fraud requires concealment of a material fact—not the failure to render a legal opinion. *Abbo*, 871 N.W.2d at 205–06.

First, it is not reasonable to infer that the duty to disclose legal ramifications stems from any source other than the attorney-client relationship. Before the legal ramifications of a patent rights assignment can be known, let alone disclosed, an attorney must examine the transaction, assess its implications under applicable law, and reach professional conclusions. That process requires the exercise of professional legal judgment—it is not an obligation that arises from an agency relationship under a power of attorney. Unlike the factual consequences of the assignment, which any agent would be obligated to disclose, legal ramifications are knowable only through professional skill. The duty to identify and communicate them is therefore supplied by the attorney-client relationship, not the power-of-attorney.

- 15 -

Second, read as a whole, this claim sounds in malpractice. A claim that attorney-defendants failed to disclose the legal ramifications of a transaction is, at bottom, a claim that they failed to fulfill their professional duty to advise their client. The alleged omission is not a material fact—it is the output of legal analysis. Because the duty element is supplied by the attorney-client relationship and the subject matter of the alleged omission is legal advice rather than a material fact, this claim does not fit the silent fraud framework. It is, instead, a claim that attorney-defendants failed to meet the professional standard of care. *See Aldred*, 458 N.W.2d at 672–73.

Because the duty to disclose legal ramifications flows exclusively from the attorney-client relationship and the claim sounds in malpractice when the complaint is read as a whole, this claim is duplicative. Accordingly, Plaintiffs' silent fraud claim based on the failure to disclose legal ramifications will be dismissed.

## C. Count IV: Innocent Misrepresentation

Plaintiffs' innocent misrepresentation claim is adequately pleaded and is not duplicative of the malpractice claim. To establish a claim for innocent misrepresentation, a plaintiff must plead all the elements of fraud, except for the requirement of intent to deceive, and must additionally allege that the party who made the misrepresentation benefited from the resulting harm. *Coosard v. Tarrant*, 995 N.W.2d 877, 884–85 (Mich. Ct. App. 2022).

- 16 -

Defendants argue that the innocent misrepresentation claim fails because the statements regarding the urgency and necessity of the assignment were conditioned upon future events and because the claim is duplicative of the legal malpractice claim. ECF No. 11 at PageID.71, 79–80. Defendants' Motion focuses specifically on the statements that the patents would be lost and Weintraub disbarred if Mr. Saberton did not execute the assignments immediately. *See Id.* Plaintiffs respond that the statements concerned present conditions or facts, not future events, and that the claims are not duplicative. ECF No. 13 at PageID.111.

Defendants' first argument rests on the premise that statements regarding urgency and necessity are necessarily forward-looking and therefore not actionable. That premise is flawed. When the statements were allegedly made, they addressed existing circumstances, namely, whether it was presently necessary for Saberton to assign his patent rights to Addman and whether that necessity was urgent at that time. ECF No. 1 at PageID.6 ("Weintraub telephoned Mr. Saberton to tell him that it was urgent and necessary for Mr. Saberton to immediately assign his patent rights to Addman."). Accordingly, even if we cannot predicate the truth of future event, Defendants' assertions referred to present conditions of necessity and urgency. Thus, their first argument fails.

Defendants' second argument, that the innocent misrepresentation claim is duplicative of the malpractice claim, fares no better. As discussed above, Michigan

law does not preclude a plaintiff from pleading fraud and malpractice claims arising from the same facts, so long as the complaint, read as a whole, does not sound exclusively in malpractice. *See Aldred*, 458 N.W.2d at 672–73. A claim that Defendants made affirmative misrepresentations about the urgency and necessity of the assignment that benefited them—even if they are legal opinions— "if knowingly false, may constitute fraud." *Brownell*, 503 N.W.2d at 87. Moreover, Defendants themselves have placed the existence of the attorney-client relationship in dispute. *See* ECF No. 10 at PageID.46. Where the predicate relationship underlying the malpractice claim is contested, it would be particularly inappropriate to dismiss a fraud-based claim as duplicative at the pleading stage. In any event, "[f]raud is no less actionable because it is committed by an attorney with whom the plaintiff has an attorney-client relationship." *Brownell*, 503 N.W.2d at 87. Accordingly, Plaintiffs' innocent misrepresentation claim survives dismissal.

### D. Count V: Declaratory Judgment

Plaintiffs' declaratory judgment claim will be dismissed because the Declaratory Judgment Act does not create an independent cause of action. The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. However, the Act "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips*

*Petroleum Co.*, 339 U.S. 667, 671 (1950)). Rather, it provides a remedy only where a viable substantive claim exists. *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (affirming denial of declaratory relief where plaintiff's substantive claims were insufficiently pleaded to entitle relief).

Defendants argue that Plaintiffs' declaratory judgment claim fails because it is not an independent cause of action and because Plaintiffs have not established an underlying substantive claim entitling them to such relief. ECF No. 11 at PageID.81. Plaintiffs respond that this Court can declare Plaintiffs' rights and "no other relief is required or needed to state a claim under § 2201." ECF No. 13 at PageID.112.

Here, Plaintiffs bring a standalone count seeking a declaration that the patent assignments are void. ECF No. 1 at PageID.13. That is not a cognizable independent claim—it is a form of relief. Because the Act does not supply an independent basis for relief, *see Davis v. United States*, 499 F.3d at 594, Count V fails as a matter of law. To the extent Plaintiffs are entitled to declaratory relief, that remedy remains available upon success on their surviving substantive claims. Accordingly, Count V will be dismissed.

In sum, Plaintiffs' fraud-based claims survive dismissal, with one exception: the silent fraud claim is dismissed to the extent it alleges Defendants withheld legal opinions, as that theory sounds in malpractice. This opinion does not foreclose Defendants from challenging the factual basis of Plaintiffs' fraud allegations at

summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED IN PART AND DENIED IN PART** as follows:

| Count | Claim | Status |
|-------|-------|--------|
| I | Legal Malpractice | Live |
| II | Fraud/Fraudulent Inducement | Live |
| III | Silent Fraud/Fraudulent Concealment about material representations of urgency and necessity to assign patent rights | Live |
| III | Silent Fraud/Fraudulent Concealment about failing to disclose ramifications, *i.e.*, withholding legal opinions | Dismissed |
| IV | Innocent Misrepresentation | Live |
| V | Declaratory Judgment | Dismissed |

**IT IS SO ORDERED.**

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 11, 2026